UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| DAVID A. KING,   )   |   |
|     *Plaintiff*, ) | |
| ) | |
| *vs*. ) | 2:10-cv-0061-JMS-WGH |
| ) | |
| DAVID LUKENS, *et al.*, ) | |
|     *Defendants.* ) | |

### ORDER

Presently pending before the Court is Defendant United States of America's ("the Government") Motion for Summary Judgment on Plaintiff David A. King's claim under the Federal Tort Claims Act ("FTCA"), which is Count III of his Amended Complaint. [Dkt. 116.] For the reasons that follow, the Court enters summary judgment in favor of the Government on Mr. King's FTCA claim.

### I.
#### SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a

genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Pro. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Pro. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id*. at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.

## II.
### BACKGROUND

#### A. Health Condition

The Court previously addressed Mr. King's health conditions in an order granting in part and denying in part a separate motion for summary judgment. [Dkt. 51.] Mr. King cites those

facts as undisputed throughout his response to the Government's summary judgment motion. [Dkt. 127.] The relevant facts are as follows.

Mr. King was incarcerated at the Federal Correctional Complex ("FCC") in Terre Haute from July 17, 2008, until December 4, 2009, when he was transferred to a facility in Minnesota. [Dkt. 51 at 1.] Upon arrival at the FCC, Mr. King underwent an intake medical screening by a member of the health services staff. [*Id.* at 4.] The intake screening indicated a diagnosis of benign prostatic hyperplasia, hypertension, asthma, anemia, and ulcerative colitis. [*Id.*]

On July 22, 2008, Mr. King was seen by a health services nurse at sick call, presenting with complaints of rectal bleeding secondary to ulcerative colitis. [*Id.*] He reported having approximately twenty movements of bloody diarrhea the previous night. [*Id.*] On July 28, 2008, Dr. David Lukens saw Mr. King for a Chronic Care Clinic ("CCC") examination. [*Id.*] Mr. King was next seen on August 18, 2008 by Defendant Yves Paul-Blanc, a physician's assistant, to address complaints of diarrhea and abdominal pain. [*Id.*] His colitis was discussed and he was given a prescription for Prednisone. [*Id.*]

From August 25, 2008 through October 31, 2003, Mr. King continued to experience severe problems with diarrhea, abdominal pain, bloody stools, extreme weight loss and other complaints associated with his colitis. [*Id.* at 4-6.] He was prescribed various medications during that time, including Prednisone, Remicade, Sulfasalazine tablets, ferrous sulfate, and an antibiotic. [*Id.*]

On November 2, 2008, Mr. King reported to the morning pill line with health complaints, and it was determined that he should be taken to the emergency room at Union Hospital for treatment. [*Id.* at 6.] Mr. King received a second treatment of Remicade while at the hospital, and the decision was made to send him to Wishard Hospital in Indianapolis for a total pro-

cotcolectomy with ileostomy and J-Pouch. [*Id.*] During his stay at the hospital, Mr. King developed herpetic conjunctivitis and a deep vein thrombosis. [*Id.*]

### B. Procedural History of Complaints

Mr. King filed this action against the Bureau of Prisons and various related individuals on February 5, 2010. [Dkt. 1.] The operative complaint was filed in July 2012, and asserts three claims: 1) *Bivens* claims against Dr. Lukens and Physician's Assistant Paul-Blanc regarding their alleged deliberate indifference to his medical condition (Count I); 2) negligence claims against Dr. Lukens and Physician's Assistant Paul-Blanc for actions taken within the scope of their employment (Count II); and 3) an FTCA claim against the Government (Count III). [Dkt. 103.]

On July 29, 2008, Mr. King received Admissions and Orientation ("A&O") training at the FCC. [Dkt. 136-1 at 3 ¶ 8, 15.] At this training, inmates receive a copy of the A&O handbook, which covers information regarding the Bureau of Prisons ("BOP"), its programs, rules, regulations, staff, etc. [*Id.* at 3 ¶ 7.] In that handbook, inmates "are instructed on the proper filing methods for Federal Tort Claims." [*Id.* at 3 ¶ 9.] In relevant part, it instructs inmates that if the negligence of institution staff results in damage to the inmate, "it can be the basis of a claim under the Federal Tort Claims Act. To file such a claim, inmates must complete a Standard Form 95. They can obtain this form from the Safety Manager." [*Id.*] Mr. King demonstrated his awareness of the process when he properly provided notice of an unrelated federal tort claim regarding lost property prior to pertinent events at issue. [Dkt. 136-1 at 2 ¶¶ 3-4.]

On or about August 21, 2009, Mr. King signed and filed an FCC Informal Resolution Form, stating that he "received improper medical treatment . . ." and that "due to the deliberate

- 4 -

indifference of medical staff . . . [he] endured incredible pain and suffering . . . ." [Dkt. 132 at 6 (Ex. B).]

On or about August 25, 2009, Mr. King completed a Request for Administrative Remedy form, wherein he complained that his administrative complaint "came back insufficiently answered" with an "evasive response." [Dkt. 132 at 7 (Ex. C).] Mr. King stated that he "would not have blood clots in my legs or herpes in my right eye if it weren't for the deliberate indifference and incompetence of Terre Haute medical staff." [*Id.*] On or about September 18, 2009, the FCC warden denied Mr. King's request for administrative remedy. [Dkt. 132 at 8 (Ex. D).]

Mr. King subsequently filed a Regional Administrative Appeal, which the BOP received on October 20, 2009. [Dkt. 132 at 9 (Ex. E).] On or about November 17, 2009, the Regional Director for the BOP North Central Regional Office denied Mr. King's administrative appeal, upholding the warden's conclusion that Mr. King had "consistently been provided timely and appropriate medical care . . . ." [*Id.*] On or about November 30, 2009, Mr. King responded by completing a Central Office Administrative Remedy Appeal, wherein he alleged that he had "experienced serious deliberate indifference from medical staff" who had "recklessly destroyed [his] health . . . ." [Dkt. 132 at 10 (Ex. F).]

Mr. King alleges that between the dates of November 30, 2009 and January 22, 2010, he sent a letter to the BOP articulating his intent "to submit medical claims." [*See* Dkt. 132 at 3 ¶ 2.] In support of this allegation, Mr. King has submitted an unsigned, undated letter asserting that he "received grossly negligent health care that has damaged [him] both physically and emotionally." [Dkt. 132 at 11 (Ex. G).] In addition to claiming that the FCC medical staff and supervisors exhibited "a deliberate indifference to [Mr. King's] medical condition," the letter claims Mr. King was "subjected to on-going negligence, inadequate treatment, long delays, pro-

crastination of necessary procedures, incorrect diagnoses, improper treatments, and prescribed medication that [was] not filled." [*Id.*] The BOP asserts that it never received Mr. King's letter, [dkt. 136-1 at 5 ¶ 11], and Mr. King has not designated proof of service.

The Government now moves for summary judgment on Mr. King's FTCA claim. [Dkt. 116.]

### III.
### DISCUSSION

The Government argues that Mr. King failed to satisfy the FTCA's requirement of first presenting his tort claim to the appropriate federal agency before pursuing the claim in federal court. [Dkt. 117 at 2.] The Government contends that Mr. King failed to provide any administrative notice that he was pursuing a tort claim for alleged malpractice. [Dkt. 117 at 2.] Additionally, the Government argues that the documents Mr. King contends notified the BOP of his intent to file a tort claim did not demand a sum certain, which is required by the FTCA to properly present a claim. [Dkt. 136 at 6-7.]

Mr. King argues that he satisfied the FTCA's statutory prerequisites and that his tort claim against the Government should be permitted to move forward. [Dkt. 127 at 4-10.] Mr. King concedes that he never submitted an executed Standard Form 95, [dkt. 127 at 4], and that he "presented his claim as a 1983 *Bivens* action", [*id.* at 7], but contends that "there is at the very least a question of fact" whether he presented his claim or whether equitable tolling should apply, [*id.* at 7].

#### A. Requirements of the FTCA

The doctrine of sovereign immunity makes clear that the United States may not be sued except by its consent. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Under this doctrine, actions for monetary damages against the United States are prohibited except to the extent

that the United States waives its sovereign immunity. *See United States v. Testan*, 424 U.S. 392, 400 (1976). The FTCA is a limited waiver of sovereign immunity, authorizing suits against the United States by those who are injured by the negligent acts or omissions of any employee of the government acting within the scope of official duties. 28 U.S.C. § 1346(b); *LM ex rel. KM v. United States*, 344 F.3d 695, 698 (7th Cir. 2003).

Under the FTCA, claims for monetary relief against the United States are prohibited unless administrative remedies are first exhausted. *See* 28 U.S.C. § 2675(a) (providing that a claimant "shall have first presented the claim to the appropriate Federal agency"); *McNeil v. United States*, 508 U.S. 106, 113 (1993). Failure to exhaust administrative remedies before bringing a suit under the FTCA mandates dismissal in favor of the Government. *McNeil*, 508 U.S. at 113.

As recognized by the Seventh Circuit Court of Appeals in *Kanar v. United States*, the Department of Justice has adopted regulations regarding what constitutes presenting a claim sufficient to satisfy the FTCA. 118 F.3d 527, 528 (7th Cir. 1997) (citing 28 C.F.R. § 14.2(a)). Under the applicable regulation, a "claim" has four elements: (1) notification of the incident; (2) demand for a sum certain; (3) the title or capacity of the person signing; and (4) evidence of the person's authority to represent the claimant. *Id.* Moreover, § 14.2(a) provides that a claimant should provide a federal agency "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for . . . personal injury, or death alleged to have occurred by reason of the incident . . . ." 28 C.F.R § 14.2(a). The Seventh Circuit has held that it is possible to litigate under the FTCA "following an administrative demand that does not comply with every jot and tittle of the rules defining a claim." *Kanar*, 118 F.3d at 530. "[I]f the claim would have been apparent to a legally sophisticated reader of the

form, then [the Court] will charge the agency with notice of that claim and deem it to have been exhausted." *Palay v. United States*, 349 F.3d 418, 426 (7th Cir. 2003).

### B. Mr. King's Submissions to the BOP

Mr. King identifies four documents that he contends notified the BOP of his FTCA claim. The Court will discuss each in turn.

#### 1) Unsigned, Undated Letter

Mr. King attests that sometime between November 17, 2009 and January 22, 2010, he sent a letter to the BOP "advising the government of my intention to file medical malpractice claims against the health care providers who treated [him] while [he] was a prisoner at Terre Haute." [Dkt. 132 at 3 ¶ 2 (referencing dkt. 132 at 11-12 (Exhibit G)).] The letter provides that it "serves as your legal notice that I am going to proceed with legal action of medical malpractice and deliberate indifference against you." [Dkt. 132 at 11.] The letter is not signed or dated, and Mr. King has no proof of service. The Government has no record of receiving Mr. King's letter. [Dkt. 136-1 at 2, ¶ 3, 4-5 ¶ 11.]

Waivers of sovereign immunity must be "strictly construed in favor of the sovereign." *Orff v. United* States, 545 U.S. 596, 602 (2005). The Seventh Circuit has held that "mailing is not presenting [a claim under the FTCA]; there must be receipt." *Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985). Courts in other jurisdictions almost uniformly agree, *see Lightfoot v. United States*, 564 F.3d 625, 628 (3rd Cir. 2009) (collecting cases), because "[p]ut simply, it cannot be strict construction of the waiver to read the word 'received' as actually meaning 'mailed[,]'" *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1252 (9th Cir. 2006). To that end, a plaintiff must offer evidence to contradict a government affidavit that his claim was never

received.[1]  *Drazan*, 762 F.2d at 58.  Courts have held that an unsigned letter attached to an affidavit is insufficient evidence of receipt.  *See Medina v. City of Philadelphia*, 219 Fed. Appx. 169, 173 (3d. Cir. 2007) (collecting cases).

The Government has attested that it has no record of receiving Mr. King's letter, [dkt. 136-1 at 2, ¶ 3, 4-5 ¶ 11], and the unsigned, undated letter Mr. King submitted is insufficient evidence of receipt for purposes of his FTCA claim.  Accordingly, the Court will not consider the unsigned, undated letter any further.

### 2)  Administrative Remedy Program Claims

Mr. King designates three documents he submitted through the BOP's Administrative Remedy Program ("ARP") and contends that these were sufficient to notify the BOP of his FTCA claim.  [Dkts. 132 at 6 (Exhibit B), 7 (Exhibit C), 10 (Exhibit F).]  Mr. King emphasizes that these documents alerted the BOP to his claim that he "received improper treatment for the medical condition with my colon."  [Dkt. 132 at 6 (Exhibit B).]

The Government argues that Mr. King's administrative remedies notices were insufficient to notify it of an FTCA claim because there is a distinction between the two notification procedures, Mr. King received training on those differences, and the documents at issue provide notice of a *Bivens* claim, not an FTCA claim.  [Dkt. 136 at 6-7.]

The Seventh Circuit has stated that "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).  Exhaustion means proper exhaustion—*i.e.*, under the terms of and according to the time set by BOP regulations.  *See Woodford v. Ngo*, 126

---

[1] Although not specifically mentioned by either party, the mailbox rule merits brief discussion. In addition to *Drazan*, "virtually every circuit to have ruled on the issue has held that the mailbox rule does not apply to [FTCA] claims, regardless of whether it might apply to other federal common law claims." *Vacek*, 447 F.3d at 1252 (collecting cases, including *Drazan*).

- 9 -

S.Ct. 2378, 2387-88 (2006). The FTCA has "its own exhaustion requirement" separate from the exhaustion requirement necessary to pursue a *Bivens* claim. *Janis v. United States*, 162 Fed. Appx. 642, 644 (7th Cir. 2006); *see also Burnette v. U.S. Bureau of Prisons*, 2006 WL 3524040, *2 (W.D. La. 2006) ("the exhaustion procedures for tort claims under the FTCA are separate and distinct from the exhaustion requirements for a *Bivens* or other type of claim") (collecting cases). For example, claims filed through the ARP must be submitted on BP forms, 28 C.F.R. § 542.14, while an FTCA claim must be filed on an SF 95 form (or other written notification), must include a "sum certain," and must be received by the appropriate Federal agency, 28 C.F.R. § 14.2(a). The regulation governing the ARP specifically indicates that it is separate from the "statutorily-mandated procedures in place for tort claims." 28 C.F.R. § 542.10(c).

The Government designated evidence that Mr. King received training upon his arrival at the FCC regarding BOP programs, rules, and regulations, including instructions on the proper filing method for federal tort claims. [Dkt. 136-1 at 3 ¶¶ 8-9, 15.] The training instructed Mr. King to file a federal tort claim on a SF 95 form, which could be obtained from the Safety Manager. [*Id.*] The Government designated evidence that Mr. King understood the difference between the administrative procedure necessary to pursue his *Bivens* claims (which are set for trial in March 2013) and the procedure necessary to provide notice of a federal tort claim. Specifically, about six months before the filings Mr. King cites to attempt to salvage his tort claim, Mr. King properly provided notice of a separate federal tort claim regarding lost property. [Dkt. 136-1 at 2 ¶¶ 3-4.] That claim made no allegations of personal injury, [dkt. 136-1 at 2 ¶ 4], and Mr. King later withdrew it, [dkt. 136-1 at 13]. This evidence shows that although Mr. King knew the difference between the procedures for initiating an administrative claim and a federal tort claim, he chose to only initiate the administrative claim with regard to the personal injury at issue.

Finally, in the administrative documents Mr. King cites, he repeatedly emphasizes the alleged "deliberate indifference of the medical staff . . . ." [Dkt. 132 at 6, 7 (stating that he would not have certain medical problems "if it weren't for the deliberate indifference and incompetence of Terre Haute medical staff), 10 ("I have experienced serious deliberate indifference from medical staff to my medical condition.").] Mr. King concedes that he never submitted an executed Standard Form 95 to provide notice of a federal tort claim, [dkt. 127 at 4], and that, instead, he "presented his claim as a 1983 *Bivens* action", [*id.* at 7]. Even to a legally sophisticated reader, *Palay*, 349 F.3d at 426, the administrative forms on which Mr. King relies, as well as the language contained therein, only gave the Government notice of Mr. King's intention to pursue a *Bivens* claim, not a federal tort claim.

The Court concludes that the undisputed evidence shows that Mr. King received training on providing proper notice of a federal tort claim and that he knew how to navigate the system, as evidenced by the fact that he provided proper notice of a federal tort claim in an unrelated incident prior to the filings at issue. Even to a legally sophisticated reader, the administrative filings Mr. King cites provide notice of a *Bivens* action, not a federal tort claim. Accordingly, the

Court concludes that Mr. King has failed to exhaust his administrative remedies under the FTCA, and that claim must be dismissed in favor of the Government.[2]

### C. Mr. King's Remaining Arguments

Mr. King presents two additional arguments in an attempt to save his FTCA claim. First, he implores the Court to apply the principle of equitable tolling and allow him to proceed with his federal tort claim. [Dkt. 127 at 10.] Mr. King further argues that by providing the Government notice of his *Bivens* claim, the Government was on notice of Mr. King's underlying malpractice allegations and its investigation was not hampered. [Dkt. 127 at 8-11.] Mr. King cites language from *Kanar* for the principle of "no harm, no foul," which he contends should apply here. [*Id.* at 9-10 (citing 118 F.3d at 531).]

The Government argues that equitable tolling does not apply in this case. [Dkt. 136 at 10-12.] It further emphasizes that equity only helps plaintiffs who could not reasonably be expected to comply for reasons beyond their control, which the Government contends is not the case with Mr. King. [*Id.* at 10-11.]

"The doctrine of equitable tolling aids plaintiffs who, because of disability, irremediable lack of information, or other circumstances beyond his control just cannot reasonably be ex-

---

[2] The Government points out that an additional reason to deny Mr. King's claim is that his administrative claims did not seek a "sum certain," which is a necessary element of an FTCA claim. [Dkt. 136 at 7]; *see Kanar*, 118 F.3d at 528 (listing "a demand for a sum certain" as an element of an FTCA claim). The Seventh Circuit has stated that "the sum certain requirement need not imply a precise demand and that statutory exceptions for newly discovered evidence and intervening facts suggest more flexibility than a sum certain requirement tolerates." *Ward v. United States*, 1 Fed. Appx. 511, 514 (7th Cir. 2011) (citing *Kanar*, 118 F.3d at 529). It appears, however, "that in nearly every case in which flexibility is introduced into the sum certain requirement, the federal government has been put on *some* degree of notice, by way of medical or other documentation, of the approximate dollar amount of the plaintiff's claim, even if that figure is not explicitly designated on the SF-95." *Lucas v. United States*, 2008 WL 73655, *2 n.3 (S.D. Ind. 2008) (original emphasis) (collecting cases). No evidence before this Court suggests that the Government was put on such notice in Mr. King's case, and this may be another basis on which to dismiss Mr. King's FTCA claim.

pected to sue in time." *Hoosier Bancorp of Indiana, Inc. v. Rasmussen*, 90 F.3d 180, 183 (7th Cir. 1996). "It does not provide aid to those plaintiffs who fail to research the requirements of bringing a lawsuit." *Id.*

In *Kanar*, the Seventh Circuit suggested that it is possible to provide notice of a claim under the FTCA following an "administrative demand that does not comply with every jot and tittle of the rules" provided that the noncompliance does not "frustrate the process of conciliation and settlement that the administrative demand is supposed to initiate." 118 F.3d at 527. The Seventh Circuit held that "'[n]o harm, no foul' is a maxim of the law of torts" and that "[t]his maxim is equally apt in administering the apparatus for seeking compensation after a tort." *Id.* at 531.

The Court will not apply the doctrine of equitable tolling to Mr. King's case because, while that doctrine can revive an untimely lawsuit, Mr. King does not cite authority for its application in the context of failing to exhaust administrative remedies. *See Wolin v. Smith Barney, Inc.*, 83 F.3d 847, 850 (7th Cir. 1996) (holding that estoppel is only appropriate where the prospective defendant himself has done something to prevent the prospective plaintiff from suing in time).

As for Mr. King's argument that the Court should forgive his noncompliance pursuant to *Kanar*, Mr. King's failures reach beyond not complying with "every jot and tittle" of the rules. By wholly failing to provide the Government with the statutorily required notice under the FTCA, including not demanding a sum certain, Mr. King did, in fact, frustrate the process of conciliation and settlement. Mr. King cannot simply bootstrap his FTCA claim onto the notice he provided for his *Bivens* claim without frustrating the separate processes that are required for initiating those distinct claims. The Court emphasizes that Mr. King was aware of those separate

processes and that he properly provided the Government with notice of an unrelated FTCA claim before filing the notice of the *Bivens* claim onto which he now tries to piggyback his current FTCA claim. [Dkt. 136-1 at 2 ¶¶ 3-4.] This significantly distinguishes Mr. King's case from the non-binding precedent he cites in support of his argument. [Dkt. 127 at 5-7 (citing *Glarner v. United States*, 30 F.3d 697 (6th Cir. 1994)).]

Finally, as for Mr. King's contention that the Government should have been required to provide him with notice that his administrative notice lacked a demand for a sum certain to make it a proper FTCA notice, this argument fails because, as the Court has already held, Mr. King did not actually provide the Government with notice of an FTCA claim. In other words, it was not necessary for the Government to inform Mr. King about the FTCA sum certain requirement because, for reasons other than his failure to include a sum certain demand, Mr. King did not provide notice of his FTCA claim.

For these reasons, the Court rejects the remainder of Mr. King's arguments and concludes that, as a matter of law, he has failed to exhaust his administrative remedies as required by the FTCA. Accordingly, this claim must be dismissed.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **GRANTS** the Government's motion, [dkt. 116], and dismisses Mr. King's FTCA claim (Count III of his Amended Complaint) because of his failure to exhaust his administrative remedies. No partial final judgment shall issue at this time.

01/16/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Jonathan A. Bont
UNITED STATES ATTORNEY'S OFFICE
jonathan.bont@usdoj.gov

Edmond W. Foley
FOLEY & SMALL
efoley@foleyandsmall.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov